# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
NOV 0 6 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   **19MJ11350**
One (1) Samsung Cellular Phone - Model Z971 )
Seized under FP&F No. 2020250300003702 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 952, 960 and 963 | Importation of a Controlled Substance and conspiracy |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mohammed Rahman, SA, Dept. of Homeland Security
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/6/19

*Judge's Signature*

City and state: El Centro, CA    Hon. Ruth B. Montenegro, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Samsung Cellular Phone
> Model Z971
> Seized under FP&F No. 2020250300003702
> **(Target Telephone)**

currently in the possession of the U.S. Department of Homeland Security, Homeland Security Investigations, which is located at 2051 N. Waterman Avenue, El Centro, California 92243.

## **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the **Target Telephone** as described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Telephone** for evidence described below. The seizure and search of **Target Telephone** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from third-party applications, photographs, audio files, videos, and location data, for the period of July 20, 2019, up to and including October 18, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, **Target Telephone**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Mohammed Rahman, Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), having been duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A (the "**Target Telephone**"), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B:

> One (1) Samsung Cellular Phone
> Model Z971
> Seized under FP&F No. 2020250300003702
> (**Target Telephone**)

This search supports an investigation and prosecution of Dylan James WILD (WILD) and Kristina Carrillo (CARRILLO), who is presently charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. The **Target Telephone** was seized from CARRILLO by Customs and Border Protection (CBP) Officers on October 17, 2019, when she was arrested for importing methamphetamine into the United States through the Calexico West, California, Port of Entry (POE), in the Southern District of California. As further explained in paragraph 15 below, CARRILLO later stated the phone belonged to WILD. As described below, WILD also stated that the **Target Telephone** belonged to him. The **Target Telephone** was turned over to HSI. The **Target Telephone** is currently in the possession of HSI, located at 2051 N. Waterman Avenue, El Centro,

California 92243 in the Southern District of California, and has been in HSI's continuous possession and securely stored since October 18, 2019.

3. As set forth in more detail below, there is probable cause to believe that a search of the **Target Telephone** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based upon (1) my experience and training, (2) my personal observations and knowledge, (3) my review of various official reports prepared by other law enforcement officers, and (4) consultation with other federal, state, and local law enforcement agents. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that others or I have learned during the course of this investigation. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a Special Agent with HSI and have been so employed since April 2017. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to a Human Smuggling Human Trafficking group in El Centro, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross-designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

5. Through training and experience, I have become familiar with narcotics trafficking techniques and the means used by narcotics traffickers to store and

2

retrieve information pertinent to their criminal activities. Based on my training and experience, as well as my consultations with other law enforcement personnel, I know that drug traffickers commonly use electronic devices such as cellular telephones, personal digital assistants (PDA), and computers to store names, telephone numbers, records, drug ledgers, and other information pertaining to drug trafficking activity.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities.

7. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

3

  e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

  f. Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

  g. Drug smugglers therefore generate many types of evidence that is stored on the cellular telephones, including, but not limited to, emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

  a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine,

or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

9. Subscriber Identity Module (SIM) Cards, also known as subscriber identity modules, are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Some of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

**FACTS SUPPORTING PROBABLE CAUSE**

5

11. According to CBP Officer (CBPO) C. Lopez's report, on October 17, 2019, at approximately 10:37 pm, WILD and CARRILLO, both United States citizens, applied for entry into the United States at the Calexico, California West Port of Entry (POE). WILD was the driver and registered owner of a 2000 Chevrolet Blazer (the Vehicle). WILD was accompanied by his girlfriend CARRILLO, who was the passenger in the vehicle.

12. According to his report, while assigned to primary lanes, CBPO C. Lopez referred the Vehicle to Secondary Inspection due to WILD having a Protection Order. According to his report, CBPO Ricardo Lopez received a negative oral Customs Declaration from both WILD and CARRILLO at secondary inspection. Then, according to his report, CBPO J. Jones' Human/Narcotics Detection Dog (HNDD) alerted to the gas tank of the vehicle.

13. According to CBPO R. Lopez's report, CBPO R. Lopez and Jones removed the fuel tank. Subsequently, they removed plastic packages containing a crystalline substance that tested positive for methamphetamine. Forty (40) packages were removed, with a total weight of approximately 18.76 kilograms (41.36 pounds) of suspected methamphetamine.

14. Subsequently, WILD and CARRILLO were arrested for importation of cocaine, in violation of 21 U.S.C. §§ 952 and 960.

15. The **Target Telephone** was found on CARRILLO's person and was seized incident to her arrest. As discussed below, after being provided *Miranda* warnings, both WILD and CARRILLO invoked. While gathering biological information, CARRILLO stated the **Target Telephone** belonged to WILD and WILD stated that the **Target Telephone** belonged to him. Task Force Officer (TFO) I. Moreno also noted that while gathering CARRILLO's biological information, TFO Moreno smelled a strong odor of gasoline coming from CARRILLO.

16. I was notified of WILD and CARRILLO's arrest, and I responded to the Calexico West Port of Entry. Upon arrival, I was provided with the **Target Telephone**. I individually advised WILD and CARRILLO of their *Miranda* rights as witnessed by TFO Moreno. Both individuals invoked their rights.

17. Based upon my experience and investigation in this case, I believe there is probable cause to believe that the **Target Telephone** contains evidence of violations of 21 U.S.C. §§ 952, 960, and 963. Specifically, I believe that WILD, CARRILLO, and other persons yet unknown were involved in an ongoing conspiracy to import cocaine or some other prohibited drugs. Probable cause also exists to believe that WILD and CARRILLO used the **Target Telephone** to coordinate with co-conspirators regarding the importation and delivery of the cocaine on the day of his arrest and on at least one earlier occasion, and to further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular telephones, which identify other persons involved in narcotics trafficking activities.

18. Finally, I also know that narcotics trafficking activities entail intricate planning to successfully evade detection by law enforcement. In my professional experience, this requires planning and coordination in the weeks and often months prior to the event. This planning often includes coordination on crossing the border to develop a crossing history or pattern. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo. This communication, both prior to, during and after the event is often accomplished/attempted via cellular telephone communication(s). Given this, I respectfully request permission to search the **Target Device** for items listed in

Attachment B beginning on July 20, 2019, up to and including October 18, 2019, which was the day following WILD and CARRILLO's arrest.

## METHODOLOGY

19. It is not possible to determine, merely by knowing the **Target Telephone's** make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in flight mode, which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained

8

1  within the telephone and its memory cards will employ search protocols directed
2  exclusively to the identification and extraction of data within the scope of this
3  warrant.

4  21.  Based on the foregoing, identifying and extracting data subject to
5  seizure pursuant to this warrant may require a range of data analysis techniques,
6  including manual review, and, consequently, may take weeks or months. The
7  personnel conducting the identification and extraction of data will complete the
8  analysis within 90 days of the date the warrant is signed, absent further application
9  to this court.

## CONCLUSION

11  22.  Based on the facts and circumstances described above, I believe
12  probable cause exists to conclude that WILD and CARRILLO were coordinating
13  with persons known and unknown to import methamphetamine or some other
14  controlled substance. Probable cause therefore exists to conclude that WILD and
15  CARRILLO used the **Target Telephone** to facilitate violations of 21 U.S.C. §§ 952,
16  960 and 963.

17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //
26  //
27  //

24. Because the **Target Telephone** was seized during the investigation of WILD and CARRILLO's smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed by WILD and CARRILLO continues to exist on the **Target Telephone**. As stated above, I believe that the appropriate date range for this search is from July 20, 2019, up to and including October 18, 2019.

25. WHEREFORE, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with HSI, or another federal law enforcement agent or officer specially trained in digital evidence recovery, to search the **Target Telephone** described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

Mohammed Rahman, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___6th___ day of November, 2019.

HONORABLE RUTH B. MONTENEGRO
United States Magistrate Judge

10

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Samsung Cellular Phone
> Model Z971
> Seized under FP&F No. 2020250300003702
> **(Target Telephone)**

currently in the possession of the U.S. Department of Homeland Security, Homeland Security Investigations, which is located at 2051 N. Waterman Avenue, El Centro, California 92243.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the **Target Telephone** as described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Telephone** for evidence described below. The seizure and search of **Target Telephone** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Telephone** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from third-party applications, photographs, audio files, videos, and location data, for the period of July 20, 2019, up to and including October 18, 2019:

a. tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

c. tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

e. tending to identify the user of, or persons with control over or access to, **Target Telephone**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.